AMERICAN BUS LINES, A DIVISION OF CONTINENTAL TRAILWAYS, A DIVISION OF NATIONAL TRAILWAYS *v.* ROBERT PAGE

[No. 3-1275A277. Filed March 23, 1978.]

*Thomas M. Gallmeyer, Rothberg, Gallmeyer, Fruechtenicht & Logan,* of Fort Wayne, for appellant.

*James M. More, Bloom & Bloom,* of Fort Wayne, for appellee.

HOFFMAN, J.—Robert Page brought an action against his employer, American Bus Lines, a division of Continental Trailways, a division of National Trailways, (American), for wages due on his services performed as a driver and for penalty damages and attorney fees associated therewith because of American's failure to comply with the provisions of IC 1971, 22-2-5-1(Burns Code Ed.) and IC 1971, 22-2-5-2 (Burns Code Ed.).[1] The cause was tried to the court without a jury whereupon judgment was entered for appellee Page and against the appellant American.

From this judgment American perfected its appeal contending con-

---

1. IC 1971, 22-2-5-1 (Burns Code Ed.) provides:

"Every person, firm, corporation or association, their trustees, lessees or receivers appointed by any court whatsoever doing business in this state shall pay each employee thereof at least semi-monthly or biweekly, if requested, the amount due such employee and such payment shall be made in the lawful money of the United States or by negotiable check, draft or money order and any contract to the contrary shall be void. Such payment shall be made for all wages earned to a date not more than ten [10] days prior to the date of such payment: Provided, That nothing herein shall be taken to prevent payments being made at shorter intervals than herein specified nor to repeal any law providing for such payments: Provided, however, That should any employee voluntarily leave his employment, either permanently or temporarily, such employer shall not be required to pay such employee any amount due such employee until the next usual and regular day for payment of wages, as established by such employer: Provided further, That in the event such employee leaves his employment voluntarily, and without his whereabouts or address being known to such employer, such employer shall not be subject to the provisions of IC 1971, 22-2-5-2 of this chapter, unless and until ten [10] days have elapsed, after such employee has made a demand for such wages due him, or has furnished such employer with his address, where such wages may be sent or forwarded to him."

IC 1971, 22-2-5-2 (Burns Code Ed.) states:

"Every such person, firm, corporation or association who shall fail to make payment of wages to any such employee, as provided in section one [22-2-5-1] of this act, shall, as liquidated damages for such failure, pay to such employee for each day that the amount due to him remains unpaid[,] ten per cent [10%] of the amount due to him in addition thereto, not exceeding double the amount of wages due, and said damages may be recovered in any court having jurisdiction of a suit to recover the amount due to such employee, and in any suit so brought to recover said wages, or the liquidated damages for nonpayment thereof, or both, the court shall tax and assess as costs in said case a reasonable fee for the plaintiff's attorney or attorneys."

trary to the trial court's findings that the Indiana Wage Law is not applicable to American, that the correct law to apply is that of Ohio and that in any event, Page's request for payment was not made in accordance with the provisions of IC 1971, 22-2-5-1, *supra*.

The dispute arose out of the following facts. American Bus Lines, Inc. is a wholly owned subsidiary of Continental Trailways, Inc. which is in turn owned by National Trailways, Inc. Continental Trailways through whom American receives its payroll has its office in Dallas, Texas. The appellee Page was hired as a bus driver by American in Hinsdale, Illinois, on March 28, 1969. While living in Illinois, Page was paid on the 12th and 27th of each month apparently in accord with the wage statutes applicable there.[2] Thereafter in March, 1971, Page exercised his seniority and moved to Toledo, Ohio, where he acquired a Fort Wayne, Indiana to Detroit, Michigan route with the same employer. While in Ohio appellee received his pay on the 15th and 30th of each month. American unilaterally made this change apparently to take advantage of the statutes in that state requiring payment of employees not later than 15 days after the work performed.[3]

---

2. Ill. Rev. Stat. 1971, ch. 48, § 36 states:

"Every corporation for pecuniary profit engaged in any enterprise or business within the State of Illinois, shall at least semi-monthly pay to every employe [sic] engaged in its business all wages or salaries earned by such employe [sic] during the semi-monthly pay period; all wages or salaries earned by such employe [sic] during such pay period shall be paid to such employe [sic] by such corporation not later than 13 days after the end of the semi-monthly pay period. Any employe [sic] who is absent at the time fixed for payment, or who for any other reason is not paid at that time, shall be paid upon demand at any time within a period of five days after the time fixed for payment; and after the expiration of such period of five days, payment shall be made upon five days demand. Any employe [sic] leaving his or her employment or discharged therefrom, shall be paid in full following his or her dismissal or voluntary leaving [sic] his or her employment, at any time within five days after leaving employment. Nothing in this act shall apply to earnings on a commission basis. No corporation coming within the meaning of this act, shall by special contract with employes [sic] or by any other means secure exemption from the provision of this act. And each and every employe [sic] of any corporation coming within the meaning of this act shall have his or her right of action against any such corporation for the full amount of his or her wages due on each regular pay day as herein provided in any court of competent jurisdiction of this State."

3. Page's Rev. Code states:

"Every individual, firm, partnership, association, or corporation doing business

On August 10, 1973, Page again exercised his seniority this time receiving a more preferable Fort Wayne to Detroit route. As a result he moved his residence from Toledo, Ohio to Fort Wayne, Indiana. On September 3, 1973, and September 29, 1973, appellee sent letters to his employer relative to his receipt of wages at his new residence. The second of these states in pertinent part:

> "As you know, I have been a resident of Indiana since August 25, 1973. You have a copy of my letter to Tom Donahue, September 3, requesting for my check to reflect Indiana tax deductions and not those from Toledo and Ohio.

> "Since this request has been ignored I am turning the matter over to Mr. J. Clifton Hirschman, Director of Indiana Wage Claims and consulting the Ohio and Indiana and Toledo City tax offices.

> "Also, as of today I am requesting my pay check on the 10th and 25th of each month in accord with Indiana wage payment statutes (enclosure) This means my wages from September 16-30 are payable October 19, etc. It is important for the company to realize they are subject to a fine (enclosure) for failure to comply with this request.

> "Since my home terminal is Fort Wayne I would like my checks sent here in the future, to the Trailways office, on or before the 10th and 25th of each month. The Company's failure to act has already cost me Toledo City Tax of $6.54 on my check Sept. 15, and now $10.11 on my check for Sept. 30."

After sending this letter, however, Page continued to receive his pay at Toledo, Ohio at the later time and the company continued to make deductions for Ohio taxes.

---

in this state shall, on or before the first day of each month, pay all its employees the wages earned by them during the first half of the preceding month ending with the fifteenth day thereof, and shall, on or before the fifteenth day of each month, pay such employees the wages earned by them during the last half of the preceding calendar month.

"If at any time of payment an employee is absent from his regular place of labor and does not receive his wages through an authorized representative, such person shall be entitled to said payment at any time thereafter upon demand upon the proper paymaster at the place where such wages are usually paid and where such pay is due. This section does not prohibit the daily or weekly payment of wages, the use of a longer time lapse that [sic] is customary to a given trade, profession or occupation, or establishment of a different time lapse by written contract or by operation of law."

Accordingly, appellee filed his complaint alleging *inter alia* that American was doing business in Indiana, that he was a resident of Fort Wayne, and that wage payments to him by the company had been delinquent in contravention of IC 1971, 22-2-5-1, *supra*, and IC 1971, 22-2-5-2, *supra*. Page prayed for damages of 10% per day of the amount due between when the pay was received and when it was due under the statute and for allowable attorney fees. Upon trial to the court the following findings and judgment were entered for Page.

"The Court now finds that the defendant is doing business in the State of Indiana for the purpose of the Indiana wage statutes.

"The Court further finds that the plaintiff is a resident of Indiana; and further finds that the plaintiff have [sic] notice as required by the Indiana wage statutes.

"The Court further finds that the parties are bound by the terms of the Indiana wage statutes.

"It is therefore concluded that the law is with the plaintiff and against the defendant.

"It is therefore ordered and decreed that the plaintiff have and recover damages pursuant to the statute in the amount of Ten Thousand Dollars ($10,000.00) together with the attorney fees in the amount of Two Thousand Nine Hundred Dollars ($2,900,00), making a total judgment of Twelve Thousand Nine Hundred Dollars ($12,900.00)."

On appeal American first contends that it entered into an employer-employee agreement with Page outside the State of Indiana thereby precluding the applicability of IC 1971, 22-2-5-1 (Burns Code Ed.) and IC 1971, 22-2-5-2 (Burns Code Ed.) to the case at bar. Thus, if any wage statute should apply, appellant would have it be that of Ohio, the state with which Page is said to have had the most intimate contacts under conflict-of-laws rules. *See, W. H. Barber Co. v. Hughes* (1945), 223 Ind. 570, 63 N.E.2d 417. American relies for support on the fact that Page was paid in accordance with the laws of Ohio prior to his move, that most of the mileage involved in his bus route was in Ohio and that since 1971, Page had received his assignments, communiques and wages in Toledo, Ohio.

However, this argument in favor of using Ohio law ignores fundamen-

tal characteristics of the case at bar. The question presented does not involve the interpretation of a private contract nor which forum's laws will apply to the interpretation of that contract. Rather the issue is whether the factual circumstances surrounding the parties come within the confines of IC 1971, 22-2-5-1, *supra*, and compel its application as a function of the police power of this state. The conflict of laws problem posed by the appellant is not relevant to the facts herein except in this context. Thus, attention must be given to the requirements of the statute and whether the circumstances in the case at bar justified the trial court's application of the penalty section of IC 1971, 22-2-5-2, *supra*, to American.

IC 1971, 22-2-5-1, *supra*, prescribes several essential requirements. The first of these is that the employer must be a ". . . [P]erson, firm, corporation, or association, their trustees, lessees or receivers appointed by any court whatsoever doing business in this state. . . ." American through Continental Trailways, Inc. had a terminal in Fort Wayne. Employed there is a resident commissioned agent engaged in selling tickets and express for American. A freight office was operated on the premises and taxes were assessed by Wayne Township in Fort Wayne, Indiana, against property owned by the company. The uncontradicted evidence therefore discloses that American is a corporation doing business in Indiana.

Secondly, IC 1971, 22-2-5-1, *supra*, provides that such enterprises, ". . . doing business in this state shall pay each employee thereof at least semi-monthly or biweekly, if requested. . . ." Appellant asserts in this regard that Page was actually employed in Ohio and not Indiana, and that his pay, supervision and assignments were given at the Toledo, Ohio Terminal. If indeed all of Page's contacts of employment were so substantially related to Ohio as to make application of the Indiana statute arbitrary, the issue posed might engender a different result. However, appropriate interpretation of IC 1971, 22-2-5-1, assumes that the phrase "each employee thereof" designates one who is employed in the doing of business in this state *viz*, that one must be employed in Indiana before he comes within the provisions of the Indiana wage statute.

In the case at bar appellant's attempt to draw into question the place

of Page's employment must be regarded as an invitation to weigh conflicting evidence. Such an invitation on appeal is declined. *Harris Builders, Inc. v. Kopp* (1974), 160 Ind. App. 354, 311 N.E.2d 841. The record reveals that Page moved to Fort Wayne, Indiana, where he became a resident on August 25, 1973. He made a request to be prospectively paid semi-monthly in accord with the Indiana wage statute on September 29, 1973, only after a previous letter regarding Ohio tax deductions had been confirmed by the company for change of address purposes. Although he continued to receive his wages at Toledo, Ohio, against his expressed will to the contrary, Page began and ended his route in Fort Wage driving 50 miles daily in Indiana. The company placed bid sheets and posted bid awards in the driver's room at the Fort Wayne Terminal. Page received communications concerning his employment there as well. The trial court's findings that these are sufficient indicia of Page's employment in this state to be afforded the benefit of its wage statute are supported by the record and become conclusive on appeal. American's conflicting evidence that Page drove 88 miles in Ohio and 76 miles in Indiana and Michigan and that its supervisory office was in Toldeo are not factors which compel an opposite conclusion concerning appellee's employment under IC 1971, 22-2-5-1, *supra.* It is only where the evidence is without conflict and can lead to but one conclusion and the trial court has reached an opposite conclusion, that the decision will be set aside as contrary to law. *Pokraka v. Lummus Co.* (1952), 230 Ind. 523, 104 N.E.2d 669.

The focus of appellant's remaining argument is related to the adequacy of Page's request as a requirement under IC 1971, 22-2-5-1, *supra.* That is, was appellee's move to Fort Wayne, Indiana, such as would make American liable under the Indiana Wage Law given the nature of Page's request in the course of ongoing employment.

American contends that it was not. American relies on the fact that when Page was hired, he failed to make a "request" to be paid pursuant to the Indiana wage statute and that he was instead a resident of Illinois, arguably subject only to the employment contract as applicable at that time through collective bargaining with the employee labor union. Citing *Standard Liquors Inc. v. Narcowich* (1951), 121 Ind. App. 600, 99 N.E.2d 268, American argues that Page's request was not

as required, directly related to the original contract of employment nor was it made prior to or concurrent with it.

In *Standard Liquors* a union contract served as evidence of wages owed and the status of the employee with the company. The court under such circumstances held that the collective bargaining agreement while a sufficient contract of employment was vague concerning the timing of wage payments and could not be considered evidence of the employee's "request" or "demand" under Ind. Ann. Stat. § 40-101 (1940 Repl.) the forerunner of IC 1971, 22-2-5-1, *supra.* Therefore when the employee made his specific request for periodic payments and the delinquency penalty *after termination* of his employment it was held to be untimely since it was not prior to or concurrent with the contract of employment.

Appellant seizes upon language used by the *Standard Liquors* court, and repeated in its progeny that the "request" to be sufficient must occur prior to or concurrent with the employment, *Palmer v. Stockberger* (1963), 135 Ind. App. 263, 193 N.E.2d 384; *Flex Let Corp. v. Vogel* (1962), 134 Ind. App. 495, 186 N.E.2d 696, and designates this as cause for reversal.

The basis for this requirement arose out of early constitutional attacks upon any payroll method which would deny the ability of the parties to contract for a different form of payment than that required by statute. In *Superior Laundry Co. v. Rose* (1923), 193 Ind. 138, 137 N.E. 761, an award for punitive damages under a wage statute was struck down because the statutes under which the suit was brought were considered an unconstitutional interference with freedom of contract. However, such constitutional considerations are not relevant to the statutes herein. Subsequent Indiana cases have upheld a similar statute requiring certain employers to pay each employee at least every two weeks "if demanded" on the ground that the fortnightly payday requirement only becomes mandatory on the employee's demand thereby preserving the right to freedom of contract. *Seelyville Coal, etc., Co. v. McGlosson* (1906), 166 Ind. 561, 77 N.E. 1044. The necessary implication is that the timing of a wage payment becomes either a negotiated term of employment or a statutorily prescribed method for insuring that wage earners receive prompt return for their labor.

Nevertheless, American uses this prior request requirement to show the inapplicability of the statute to the facts herein. Appellant contends that Page and American entered into an implied contract for the semi-monthly payment of wages on the 12th and 27th of each month when he was first employed. Furthermore, since Page accepted payment under the Illinois wage statute without objection it is said that he was bound by that method of payment throughout his relationship with American absent a new contract to the contrary regardless of where he lived.

However, appellant's assertion that there was an implied contract of employment involving a method of payment other than that prescribed by statute ignores the change it made upon Page's transfer from Illinois. Upon moving to Ohio, appellee was paid on the 15th and 30th of each month, dates later than those followed in Illinois. The mere acceptance by Page of wages paid under such circumstances does not evince an implied contract to accept payment on terms only convenient to the company. Indeed the evidence suggests that if an implied contract is susceptible to inference it is one whereby American accepted the wage statutes of each state where Page worked.

Moreover, Page's "request" for payment was made prior to or concurrent with his employment in Indiana. After his move from Toledo to Fort Wayne the terms and conditions of Page's employment with American changed. He had bid on and accepted a different Detroit run. He had a new home terminal and a new place of residence. These were changes in the relationship which constituted a modification in the contract of employment. Thereafter the effect of the "request" would be relevant only to wages "to be paid" under those new circumstances of employment contemplated by the parties.

It must be concluded therefore that by moving to Indiana and by taking his employment communications from American at Fort Wayne, Page began working under a mutually modified contract of employment falling within the Indiana wage statute. Although American was free to negotiate a separate method of payment with its employee at this time, it failed to do so. Page wrote two letters one of which was to the regional manager in Pittsburgh, Pennsylvania. Page explicitly requested that he be paid under the Indiana

statute as a new resident working out of the Fort Wayne Terminal. However, American continued to pay him as an Ohio resident.

Upon the issue of where Page was employed the evidence was in conflict. The trial court resolved that conflict in favor of Page. Since American has failed to demonstrate reversible error in this determination or in the application of IC 1971, 22-2-5-1, *supra*, the judgment of the trial court must be affirmed.

Judgment affirmed.

Buchanan, C.J., participating by designation, concurs.

Garrard, P.J. concurs with opinion.

## CONCURRING OPINION

GARRARD, J.— While I concur with the majority opinion, I believe a further word may assist in explaining our holding and its impact.

As I view it, the significance of *Standard Liquors, Inc. v. Narcowich* (1951), 121 Ind. App. 600, 99 N.E.2d 268, is to give effect to the statutory requirement that the demand for semi-monthly or bi-weekly payment of wages must *precede* the work period for which liability is later asserted. There must be a demand for payment according to the statute, and liability cannot be posited for wages earned before the demand was made.

Secondly, to comport with *Superior Laundry Co. v. Rose* (1923), 193 Ind. 138, 137 N.E. 761 the statute permits the parties to agree to a different form of payment. Had the evidence established that Page expressly contracted with American (either individually or by becoming a member of a collective bargaining unit whose employment contract expressly provided when wages were to be paid) as to when his wages were payable during his employment by American, that agreement would survive his transfer to Indiana and preclude him from invoking the statute. Such a result would be required to preserve the freedom of contract that the statute is designed to protect.

However, the collective bargaining agreement was silent as to when wages were payable, and the evidence supported a finding of no ex-

press agreement between Page and American which would cover his employment in Indiana. Under these circumstances the public policy of the Indiana wage statute became applicable when Page became "an Indiana employee." Since he had no express agreement as to when wages were payable, he was eligible to invoke the statute.

NOTE—Reported at 373 N.E.2d 928.